UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____

ROBERT MICHAEL EDWARD GIROUARD

           Plaintiff,

v.                                                                          Case No.: _____

MCALLISTER TOWING OF                              JURY TRIAL DEMANDED
NARRAGANSETT BAY, LLC, in personam;
MCALLISTER TOWING OF NARRAGANSETT
BAY, LLC d/b/a PROVIDENCE STEAMBOAT
COMPANY, in personam; MCALLISTER TOWING
AND TRANSPORTATION COMPANY, INC., in
personam; and TUG RAINBOW (Official # 1163629)
its engines, tackle, towing gear, apparel, contents,
bunkers, permits, electronics, appurtenances, etc., in rem

           Defendants.

_____

## **VERIFIED COMPLAINT**

      Plaintiff ROBERT MICHAEL EDWARD GIROUARD sues the Defendants,

MCALLISTER TOWING OF NARRAGANSETT BAY, LLC; MCALLISTER TOWING OF

NARRAGANSETT BAY, LLC d/b/a PROVIDENCE STEAMBOAT COMPANY;

MCALLISTER TOWING AND TRANSPORTATION COMPANY, INC. and TUG

RAINBOW (Official # 1163629) its engines, tackle, towing gear, apparel, contents,

bunkers, permits, electronics, appurtenances, etc., in rem alleging as follows:

<u>SUMMARY OF THE CASE</u>

1.      Robert Michael Edward Girouard is a 31-year-old man with a history of working aboard tugboats.  Robert has never previously filed a lawsuit.  He's married, a father and an employee described in the Defendants' May 2016 performance evaluation in this way:

> Robert is a fantastic shipmate and has made great strides in his line handling and general seamanship. He cares greatly about the health and well being of his shipmates, and goes above and beyond when it comes to taking on extra work, filling in whenever needed . Robert has expressed his desire in obtaining his license . I highly recommend Robert for advancement . His attention to detail and  dedication to duty  makes him valuable asset  and will for years to come.

Image # 1 excerpting portions of the Defendants' May 2016 Performance Evaluation.

2.      In December 2016, Robert was a deckhand aboard the Tug RAINBOW when while working to pass a hawser (a thick rope) from the tugboat to a ship, he was badly injured resulting in years of subsequent medical treatment, multiple surgeries, persistent pain and an inability to return to his love of working on the sea.

3.      Following the injury and his surgeries, Robert has done everything right to try and get on with his life.  He's attended his prescribed physical therapy sessions.  He's done what his doctors and the specialists have told him to do.  Still, as of the filing of this Complaint (*nearly three years later*), Robert remains in persistent pain, lacks mobility and walks with a cane.  He cannot sit or stand for long periods of time.  He's not

been released back to work and his injury has and will continue to severely impact his life and his ability to perform his job.

THE PARTIES

4.      Plaintiff, Robert Michael Edward Girouard is a 31 year old United States citizen who maintains his permanent residence in Warwick, Kent County, State of Rhode Island and Providence Plantations ("Rhode Island").

5.      At all times material hereto, Girouard received medical treatment and care for his injuries including his surgeries in Rhode Island.

6.      At all times material hereto, Girouard was a professional seafarer and licensed merchant mariner actively engaged in maritime employment aboard vessels located in the United States.

7.      Defendant McAllister Towing of Narragansett Bay, LLC is a business entity organized and existing under the laws of the State of Delaware and registered to do business in Rhode Island.

8.      Defendant McAllister Towing of Narragansett Bay, LLC d/b/a Providence Steamboat Company is a business entity organized and existing under the laws of the State of Delaware.

9.      The "Providence Steamboat Company" is registered with Rhode Island as the fictitious name of McAllister Towing of Narragansett Bay, LLC.[1]

10.     McAllister NB maintains a Registered Agent in Warwick, Rhode Island.

---

[1]      McAllister Towing of Narragansett Bay, LLC d/b/a Providence Steamboat Company and McAllister Towing of Narragansett Bay, LLC are collectively hereinafter referred to as "McAllister NB".

11.     Defendant McAllister NB has an office and place of business located at One India Street, Providence, Rhode Island.

12.     Defendant McAllister Towing and Transportation Company, Inc. ("MT&T")[2] is a business entity organized and existing under the laws of the State of Delaware with an agent for service of process located at 17 Battery Place, Suite 1200, New York, New York.

13.     The property located at One India Street, Providence, Rhode Island at which Defendant McAllister NB does business is owned by a Delaware entity (One India Place, LLC) with an address of 17 Battery Place, Suite 1200, New York, New York.

14.     Upon information and belief, Defendants McAllister Towing NB and MT&T possess, control and are otherwise the beneficial owners of the Rhode Island real property located at One India Street, Providence, Rhode Island.

15.     Defendants provide ship assist operations on Narragansett Bay, Rhode Island using a fleet of vessels they own and/or operate from the property located at One India Street, Providence, Rhode Island.

16.     Defendant TUG RAINBOW (Official # 1163629) its engines, tackle, towing gear, apparel, contents, bunkers, permits, electronics, appurtenances, etc. (collectively "Vessel"), in rem is a United States documented towing vessel and part of the Defendants' fleet of vessels used in their ship assist operations.

17.     The Vessel is approximately eighty-seven feet (87') in length and was built in 2004.

---

[2]     Sometimes this entity appears to be identified as "McAllister Towing & Transportation Co., Inc." and "McAllister Towing & Transport Co., Inc.".

18.      Attached as Exhibit "A" is a true, accurate and complete copy of the Defendants' webpage titled "Fleet Location" identifying the Vessel with the Port of Providence, Rhode Island.

19.      The Vessel is regularly operated in the navigable waters of Rhode Island and is or will be within the territorial jurisdiction of the United States District Court for the District of Rhode Island during the pendency of this action.

20.      At all times material hereto, MT&T owned the Vessel.  See United States Coast Guard Abstract of Title attached as Exhibit "B".

21.      Defendant McAllister NB is the licensee shown on the Federal Communications Commission's "Ship Compulsory Equipped License" (call sign # WDC3878) associated with the Vessel.  *See*, "Ship Compulsory Equipped License" attached as Exhibit "C".

22.      At all times material hereto, the Vessel is a "vessel" as defined by Title 1 U.S.C. § 3.

23.      Upon information and belief, MT&T procured marine insurance coverage for the Vessel.

24.      At all times material hereto, the Vessel was entered with the Steamship Mutual Underwriting Association Limited which provides insurance to the shipping industry.

25.      McAllister Towing NB employed Girouard as crew aboard the vessels it owned, managed, controlled and/or operated within its fleet including aboard the Vessel on December 16, 2016.

26.     On December 16, 2016, McAllister NB agreed to pay Girouard remuneration for his work aboard the Vessel.

27.     Alternatively and/or additionally, at all times material hereto, one or all of the in personam Defendants were the Jones Act employer of the crew serving aboard the Vessel, including Girouard.

28.     Alternatively and/or additionally, at all times material hereto, Girouard was a "borrowed servant" working aboard the Vessel placed at the disposal, control and/or loaned to the owners, operators and/or charterers of the Vessel who exercised authoritative and substantive direction and control or right to control, over the performance of the particular mode, manner and/or activities of Girouard at the times of the acts causing or contributing to Girouard's injuries rendering the owners, operators and/or charterers of the Vessel the actual employer of Girouard and responsible for his injuries.

29.     Alternatively and/or additionally, at all times material hereto, Girouard was performing the Vessel's work aboard the Vessel for a considerable length of time at the direction, under the supervision and control of the owners, operators and/or charterers of the Vessel who furnished the tools and equipment necessary for Girouard's work and had the right to discharge Girouard at any time.

30.     Alternatively and/or additionally, at all times material hereto, there was an agreement or understanding or other meeting of the minds between the owners, operators and/or charterers of the Vessel, on the one hand, and the remaining Defendants, on the other hand, whereby the owners, operators and/or charterers of the Vessel would be borrowing Girouard's services to perform the Vessel's work on the

Vessel over a considerable length of time and Girouard acquiesced to the work situation.

31.     Girouard specifically invokes the Court's federal question jurisdiction under Title 28 U .S.C. § 1331 to resolve his Jones Act negligence claims against the in personam Defendants.

32.     Girouard invokes the Court's admiralty jurisdiction under Title 28 U.S.C. § 1333 to resolve his unseaworthiness, maintenance and cure and wage claims as well as his alternative negligence claim set forth at Count Five.

33.     Girouard invokes Rule 9(h) for the limited purpose of using Supplemental Admiralty Rule C to foreclose his preferred maritime lien(s) against the in rem Defendant Vessel.

34.     At all times material hereto, Defendants were responsible for owning, chartering, operating, managing, crewing, equipping and/or maintaining the Vessel.

35.     The Defendants are subject to the personal jurisdiction of the State of Rhode Island as entities operating, conducting, engaging in and/or carrying on a business venture in Rhode Island or having an office in Rhode Island or agent in Rhode Island or otherwise committing a tortious act within Rhode Island; engaging in substantial and not isolated activity within Rhode Island; causing an injury to Girouard within Rhode Island arising out an act or omission by the Defendants outside Rhode Island and/or by reason of other acts and/or omissions to be revealed through discovery.

36.     Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b)(2) on the basis that the Girouard was injured in Rhode Island and on the basis that the control

and operation of the Vessel including operational directives, maintenance, repairs, procedures and the like associated with the issues likely to be in dispute in this matter originated from and/or occurred in Rhode Island.

37.     Venue in this Court is also appropriate because venue with respect to Girouard's maritime claims is proper wherever the Defendants have property.  *See,* Williamson v. Recovery Ltd. P'ship, 2006 U.S. Dist. LEXIS 86902 (S.D.Oh. Nov. 30, 2006); Davis v. Hill Engineering, 549 F.2d 314 (5th Cir. 1977), citing Ex Parte Louisville Underwriters, 134 U.S. 488 (1890).

38.     Girouard's negligence claims set forth at Count One are governed by the "Jones Act", Title 46 U.S.C. § 30104 and the "Federal Employers Liability Act", Title 45 U.S.C. §§ 51 - 60, which is incorporated into the Jones Act.

39.     Girouard's unseaworthiness, maintenance and cure and wage claims as well as his alternative negligence claim set forth at Count Five are governed by the federal maritime law.

40.     Girouard has fulfilled all conditions precedent for filing this action.

### GENERAL ALLEGATIONS ABOUT THE INCIDENT

41.     At all times material hereto, the Defendants owned, operated, chartered, crewed, maintained, controlled and/or managed various commercial towing vessels (including the Vessel) which were engaged in providing a full range of ship assist services in Rhode Island and aboard which Girouard was employed as a Jones Act seaman.

42.      In 2016, including on December 16, 2016, the Vessel was engaged in the docking and sailing of ships in and around the Port of Davisville, Rhode Island.

43.     On December 16, 2016, Girouard was aboard the Vessel in the role of an ordinary seaman in the position of deckhand while the Vessel was located on navigable waters in Rhode Island.

44.     On December 16, 2016, Girouard was married and had recently purchased a home in Warwick, Rhode Island which carried a mortgage loan.

45.     On December 16, 2016, Girouard was the primary earner in his household.

46.     On December 16, 2016, there was uncleared snow and/or ice on the raised bulwark at the Vessel's bow.

47.     On December 16, 2016, there was no ice-melt, rock salt or such similar products aboard the Vessel by which to treat the snow and/or ice on the Vessel including on the raised bulwark at the Vessel's bow.

48.     On December 16, 2016 and before assisting any ship that day, Girouard offered to clear the snow and/or ice on the raised bulwark at the Vessel's bow.

49.     On December 16, 2016, the Vessel's Captain told Girouard not to clear the snow and ice on the raised bulwark because of the lack of or insufficient nonskid in that location and because there was no ice-melt, rock salt or such similar product.

50.     On December 16, 2016, the Vessel was engaged in a ship assist which required Girouard to place a hawser (a thick rope) around the Recessed Bitt (also known as a "Dutch Bollard') located on the ship's side so as to tether the Vessel to the ship.



Image # 2 showing an example of a Recessed Bitt (a/k/a "Dutch Bollard)

51.     The Vessel's hawsers are heavy.

52.     The Recessed Bitts on the ships the Defendants' tugboat fleet assists are typically located above a tugboat's deck.

53.     The Recessed Bitts on the ships the Defendants' tugboat fleet assists are typically located beyond the reach of any crewmember working on a tugboat's deck.

54.     Normally, and consistent with how he was trained by the Defendants, Girouard would climb onto the raised bulwark at the front of the Defendants' tugboat and while standing there, he could more easily reach the ship's Recessed Bitt.



Image # 3 depicting the Vessel with arrow identifying the raised bulwark

55.     On December 16, 2016, in connection with assisting a ship, Girouard was ordered to place the Vessel's hawser around the ship's Recessed Bitt.

56.     On December 16, 2016, in connection with complying with his orders, Girouard stood on the Vessel's deck and used a pole to try and raise the hawser into the air and get it around the ship's Recessed Bitt.

57.     The pole Girouard used to get the Vessel's hawser around the ship's Recessed Bitt was shorter than the poles he had used aboard other tugboats in the Defendants' fleet.

58.     The pole Girouard used to get the Vessel's hawser around the ship's Recessed Bitt was not sturdy, wobbled and was defective.

59.     The pole Girouard used to get the hawser around the Recessed Bitt was the only pole he could find aboard the Vessel to use.

60.     Because the raised bulwark on the Vessel's bow was covered in snow and/or ice and he had been ordered not to clear the bulwark because of the lack of or insufficient nonskid in that location and because there was no ice-melt, rock salt or such

similar product, Girouard was forced to work from the Vessel's deck to accomplish getting the Vessel's hawser around the ship's Recessed Bitt.

61.     Working from the Vessel's deck placed Girouard even further away from the ship's Recessed Bitt (which was above him) forcing Girouard to stretch and work above his head with his arms raised to strain and push the Vessel's hawser around the ship's Recessed Bitt.

62.     On December 16, 2016, as Girouard made one last move resulting in the Vessel's hawser being secured around the ship's Recessed Bitt, he felt a sudden, sharp pain in his lower back (hereinafter sometimes "Incident").

63.     On December 16, 2016, he immediately informed the Vessel's captain of the Incident.

64.     On December 16, 2016, upon learning of the Incident, the Vessel's captain deviated the Vessel from the ship assist and delivered Girouard ashore so that he could seek medical treatment.

65.     At all times material hereto, the Defendants knew and/or reasonably should have known that the lack of or insufficient non-skid in the vicinity of the Vessel's raised bulwark, presented a hazard.

66.     At all times material hereto, the Defendants knew and/or reasonably should have known that the failure to provide ice-melt, rock salt or such similar product, presented a hazard.

67.     At all times material hereto, the Defendants knew and/or reasonably should have known that the presence of snow and/or ice on the Vessel's raised bulwark,

presented a hazard in that, among other things, it prevented the crew (including Girouard) from performing their duties in a safe and proper manner.

68.　　At all times material hereto, the Defendants knew and/or reasonably should have known that the insufficient, inadequate and defective pole, presented a hazard.

69.　　Girouard was injured by reason of hazardous conditions aboard the Vessel.

70.　　Girouard has experienced significant pain, suffering and emotional distress as a result of the incident, surgeries, treatment and physical therapy he has endured.

71.　　Girouard continues to treat for his injuries.

72.　　All of the medical treatment Girouard has undergone subsequent to the Incident and such medical treatment he will undergo in the future was and is causally related to the Incident.

73.　　Girouard has not reached Maximum Medical Improvement.

74.　　Upon information and belief and despite the obligation to do so, none of the Defendants filed a form CG-2692 (titled Report of Marine Casualty) with the United States Coast Guard.

75.　　Girouard has a preferred maritime tort lien against the Vessel for damages caused by the Incident.

76.　　Girouard's preferred maritime tort lien is superior to any ship mortgage that may exist against the Vessel.

77.　　At all times material hereto, the Vessel was on navigable waters.

78.     At all times material hereto, the Defendants knew or should have known of the facts supporting the negligence asserted herein including the defects in the Vessel.

79.     At all times material hereto, Girouard exercised due care in the performance of his duties.

## COUNT ONE

### GIROUARD'S UNSEAWORTHINESS CLAIM

80.     Girouard reasserts and realleges all of the preceding allegations in paragraphs 1 – 79 as if fully set forth herein.

81.     This unseaworthiness cause of action is governed by the federal maritime law of the United States of America.

82.     Girouard demands a jury trial of his unseaworthiness claim in accordance with the Supreme Court's ruling in Fitzgerald v. United States Lines Co., 374 U.S. 16 (1962).

83.     Girouard invokes Supplemental Admiralty Rule C for purposes of arresting the in rem Defendant Vessel and foreclosing his maritime tort lien against the Vessel.

84.     Girouard has a preferred maritime tort lien against the Vessel for the damages he sustained as a direct and proximate result of the Vessel's unseaworthiness.

85.     Under the general maritime law, Girouard is entitled to foreclose his maritime tort lien against the Vessel.

86.     If Defendants and/their Insurer refuse to post substitute security to stand in lieu of the Vessel's arrest and/or seizure, Girouard will seek to arrest and seize the Vessel if he has not already elected to do so.

87.     At all material times hereto, the Defendants and the Vessel, jointly and severally, had an absolute, non-delegable duty to provide a seaworthy vessel to Girouard, which was reasonably safe and fit for its intended purposes.

88.     On or about December 16, 2016, the Defendants and the Vessel breached their warranty to provide Girouard with a reasonably safe and fit vessel because of one or more of the following defects:

   a.   Vessel lacking safe and proper appliances;
   b.   Defective line handling equipment including a defective pole used
          to pass the hawser around a ship's Recessed Bitt;
   c.   Vessel not properly manned;
   d.   Vessel's deck not properly maintained;
   e.   Vessel's deck lacking nonskid or lacking sufficient nonskid;
   f.   Vessel's deck unreasonably slippery by reason of ice and/or snow;
   g.   Vessel lacking treatment for ice and/or snow such as ice-melt or rock salt;
   h.   Vessel lacking appropriate skid resistance surface on the bulwark;
   i.   Vessel lacking safety rules or adequate safety rules and practices
          including, but not limited to, rules regarding the making up of tethered
          escorts and rules regarding the handling of hawsers;
   j.   Vessel with improperly maintained deck surfaces;
   k.   Vessel not properly equipped;
   l.   Vessel lacking adequate supervision and instruction and
   m.   Other and/or different defects as may be shown at trial.

89.     As a result of the defects, Girouard sustained serious personal injuries and/or aggravation of pre-existing physical conditions the full extent of which is not yet known; has in the past required and will in the future require medical treatment, care and attention; will be obliged to expend monies and incur obligations for medical care and attention; has in the past suffered and will in the future continue to suffer agonizing aches, pains and mental anguish; has in the past been, presently is, and will be in the future disabled from performing his usual duties, occupations and avocations and has and will in the future suffer a loss of earnings.

90.     The serious personal injuries sustained by Girouard were not caused by any fault on his part, but were a direct result or a reasonably probable consequence of the Vessel's unseaworthiness.

91.     At all times material hereto, Girouard was in the scope of his employment as a seaman at the time he sustained his serious personal injuries and was performing labors in furtherance of the Defendants' business.

92.     The Vessel's unseaworthiness directly and proximately caused Girouard to sustain damages consisting of, among other things, past and future medical expenses, past and future lost wages, loss of future earning capacity, past and future pain, suffering and loss of enjoyment of life, permanent physical impairment and disfigurement.

93.     Girouard's injuries are permanent and continuing in nature.

94.     At all times material hereto, the Defendants knew or should have known of the facts supporting the unseaworthiness asserted herein including the defects in the Vessel.

95.     Girouard demands judgment against the Defendants, jointly and severally, for all of his compensatory damages in an amount to be determined by a Jury together with interest and costs.

WHEREFORE, Plaintiff Robert Michael Edward Girouard, moves the Court to provide the following relief:

a.     Issuance of an Order citing all persons having or claiming an interest in the Vessel to file a Claim of Interest and an Answer in this action;

b.      Issuance of an Order directing the Clerk of Court to issue a warrant of arrest in rem for the Vessel, and order the U.S. Marshal to arrest the Vessel so it is brought within the Court's jurisdiction;

c.      Declare that Plaintiff Robert Michael Edward Girouard has a preferred maritime tort lien against the in rem Defendant Vessel to pay his damages;

d.      Issuance of an Order instructing the Clerk of Court to accept the Owner's, or its Insurer's, check so that the money necessary to bond the Vessel from arrest is deposited into the Court's registry;

e.      Entry of final judgment in favor of Plaintiff Robert Michael Edward Girouard awarding him all of his compensatory damages in an amount not less than US$2,000,000.00 together with interest including prejudgment interest and costs against the in rem Defendant Vessel and the in personam Defendants, jointly and severally;

f.      Issuance of an Order directing the U.S. Marshal to sell the Vessel and allowing Plaintiff Robert Michael Edward Girouard to credit bid up to the full amount of his judgment as part of the maritime lien foreclosure process;

g.      Alternatively, in the event the Defendants post substitute security, that the Court issue an Order directing the Clerk of Court to pay the substitute security to Girouard to help satisfy his judgment; and,

h.      For the Court to award such other and further relief it deems just and proper.

## COUNT TWO

### GIROUARD'S JONES ACT NEGLIGENCE CLAIM
### FOR FAILURE TO PROVIDE A REASONABLY SAFE PLACE TO WORK

96.     Girouard reasserts and realleges all of the preceding allegations in

paragraphs 1 – 79 as if fully set forth herein.

97.     Girouard demands a jury trial for his Jones Act negligence cause of action.

98.     As the actual or borrowing employer, Defendants NB McAllister and MT&T

(hereinafter for this Count II referred to as "In Personam Defendants") owe a duty of

reasonable care to provide Girouard with a safe place to work.

99.     The In Personam Defendants are vicariously liable for the acts and

omissions of the Vessel's captain and crew.

100.    On December 16, 2016, the In Personam Defendants breached their duty

of reasonable care to provide Girouard with a safe place to work because of one or

more of the following acts or omissions:

  a.   Failure to provide adequate tools, equipment and safety devices;
  b.   Failure to supply the Vessel with proper supplies including deck coating
         supplies and ice-melt, rock salt or similar substances;
  c.   Failure and negligence of fellow employees;
  d.   Insufficient crew;
  e.   Failure to use due care to provide Girouard with a reasonably safe
         place in which to perform his work;
  f.   Adoption of or permitting of unsafe ship assist procedures;
  g.   Adoption of or permitting of unsafe Vessel decks;
  h.   Failing to following good industry practices in connection with ship assist
         operations;
  i.   Allowing painted deck areas without nonskid to exist;
  j.   Allowing an unsafe deck to exist;
  k    Failing to properly instruct, supervise and/or train the crew;
  l.   Failure to maintain the Vessel's deck and
  m.   Failure and negligence in other respects as will be shown at trial.

101.     The In Personam Defendants failed to establish appropriate safety rules and procedures to prevent the Incident from happening.

102.     At all times material hereto, the In Personam Defendants knew or should have known of the facts supporting the negligence asserted herein including the defects in the Vessel.

103.     As a result of the Defendants' negligence, Girouard sustained serious personal injuries and/or aggravation of pre-existing physical conditions the full extent of which is not yet known; has in the past required and will in the future require medical treatment, care and attention; will be obliged to expend monies and incur obligations for medical care and attention; has in the past suffered and will in the future continue to suffer agonizing aches, pains and mental anguish; has in the past been, presently is, and will be in the future disabled from performing his usual duties, occupations and avocations and has and will in the future suffer a loss of earnings.

104.      Girouard's serious injuries were proximately caused by and resulted from the In Personam Defendants' breach of their duty of reasonable care to provide Girouard with a safe place to work.

105.     Girouard was in the scope of his employment as a seaman at the time he sustained his serious personal injuries.

106.     The serious personal injuries sustained by Girouard were not caused by any fault on his part, but were caused by the In Personam Defendants and their agents, servants and/or employees.

107.     As a direct and proximate result of the negligence or fault of the In Personam Defendants, Girouard sustained damages consisting of, among other things,

past and future medical expenses, past and future lost wages, lost earning capacity,

past and future pain and suffering and loss of enjoyment of life, permanent physical

impairment, and disfigurement.

108.	Girouard's injuries are permanent and continuing in nature and he will

suffer losses and impairment in the future.

WHEREFORE, Plaintiff Robert Michael Edward Girouard demands judgment

against the In Personam Defendants, jointly and severally, for all of his compensatory

damages in an amount not less than US$2,000,000 to be determined by a Jury together

with prejudgment interest, costs and, such other and further relief as this Court may

deem just and proper.

## COUNT THREE

### GIROUARD'S MAINTENANCE AND CURE CLAIM

109.	Girouard reasserts and realleges all of the preceding allegations set forth

in paragraphs 1 through 79 as if fully set forth herein.

110.	Girouard demands a jury trial of his maintenance and cure claim in

accordance with the Supreme Court's ruling in Fitzgerald v. United States Lines Co.,

374 U.S. 16 (1962).

111.	Under the general maritime law, Defendants have a non-delegable duty to

provide Girouard with "maintenance and cure" until the treating physician(s)

unequivocally determines he has reached maximum medical cure.

112.	"Maintenance" is a daily living allowance that an employer is required to

pay a seaman to support the seaman while he is injured and in need of medical

treatment.

113.     "Cure" is the payment of medical expenses to treat the seaman's injuries.

114.     Girouard was injured while in the service of the Vessel.

115.     At all times material hereto, Defendants were aware of and/or possessed

first-hand knowledge of Girouard having been injured while in the service of the Vessel.

116.     At all times material hereto, Defendants were promptly made aware of

Girouard's injuries.

117.     Defendants have a non-delegable duty to investigate, manage and

provide Girouard's maintenance and cure until the treating physician(s) unequivocally

determines he has reached maximum medical cure.

118.     As a result of the serious personal injuries described above, Girouard has

incurred and will continue to incur expenses for his maintenance and cure.

119.     It is fundamental maritime law that ambiguities about a seaman's need for

medical treatment must be resolved in favor of the seaman

120.     The Defendants have failed to provide and/or insufficiently provided

maintenance and cure and together with such refusals to do so in the future, Girouard

demands all of his compensatory damages for his past and future maintenance and

cure until the treating physician(s) unequivocally declares he is at maximum medical

cure.

WHEREFORE, Plaintiff Robert Michael Edward Girouard demands the Court

enter a final judgment in his favor against Defendants, jointly and severally, and that the

Court award him all of his past and future maintenance and cure in an amount to be

determined at trial, punitive damages, attorneys' fees for having to retain the

undersigned attorneys to prosecute the maintenance and cure claim (as the applicable

law and circumstances allow), interest including prejudgment interest, costs and such other and further relief as this Court may deem just and proper.

## COUNT FOUR

### GIROUARD'S WAGE CLAIM

121.     Girouard reasserts and realleges all of the preceding allegations set forth in paragraphs 1 through 79 as if fully set forth herein.

122.     To the extent that Girouard is owed any back wages for his time served on the Vessel for which he has not received, he demands payment of the same.

WHEREFORE, Plaintiff Robert Michael Edward Girouard demands the Court enter a final judgment in his favor against Defendants, jointly and severally, and that the Court award him all of his back wages for the time he served on the Vessel for which he has not received in an amount to be determined at trial, attorneys' fees for having to retain the undersigned attorneys to prosecute the wage claim (as the applicable law and circumstances allow), interest including prejudgment interest, costs and such other and further relief as this Court may deem just and proper

## COUNT FIVE

### NEGLIGENCE CLAIM UNDER THE GENERAL MARITIME LAW

123.     Girouard reasserts and realleges all of the preceding allegations set forth in paragraphs 1 through 79 as if fully set forth herein.

124.     As an alternative Count and without prejudice to the preceding Counts, Girouard alleges the In Personam Defendants owed him a duty of reasonable care while he was aboard the Vessel.

125.     Girouard alleges the In Personam Defendants breached their duty of reasonable care by, among other things, failing to clear snow and/or ice from the Vessel; supplying defective equipment; failing to supply ice-melt, rock salt and/or such similar products; failing to adopt safe ship assist procedures and through other actions and omissions by persons and/or employees for whom they are responsible and/or in other ways as will be shown at trial.

126.     The negligence alleged in this alternate Count directly resulted in or was a reasonably probable consequence of the cause or contributed to the cause of Girouard sustaining his injuries and damages consisting of, among other things, past and future medical expenses, past and future lost wages, loss of future earning capacity, past and future pain, suffering and loss of enjoyment of life, permanent physical impairment and disfigurement.

127.     The serious personal injuries sustained by Girouard were not caused by any fault on his part, but were caused by the In Personam Defendants and their agents, servants and/or employees.

128.     At all times material hereto, the In Personam Defendants knew or should have known of the facts supporting the negligence asserted herein.

129.     Girouard's injuries are permanent and continuing in nature.

130.     Girouard demands judgment against the In Personam Defendants for all of his compensatory damages in an amount to be determined by a Jury together with interest and costs.

WHEREFORE, Plaintiff Robert Michael Edward Girouard demands the Court enter a judgment in his favor against the In Personam Defendants and that the Court

award him compensatory damages in an amount not less than US$2,000,000.00 together with interest including prejudgment interest and costs and for the Court to award such other and further relief it deems just and proper.

JURY DEMAND

Plaintiff, Robert Michael Edward Girouard, demands a trial by jury on all issues so triable.

// Signature Page Follows //

Dated:      December 9, 2019
                Newport, Rhode Island

                            Fulweiler llc

By:     /s/ John K. Fulweiler

        _____
        John K. Fulweiler, Esq. (RI-7876)
        W.B. Franklin Bakery Building
        40 Mary Street
        Newport, RI 02840
        (401) 667-0977 -- Telephone
        (401) 656-2501 – Facsimile
        john@saltwaterlaw.com
        www.saltwaterlaw.com
        *Attorneys for Plaintiff*

        Law Offices of Maurice Cusick

        /s/ Maurice Cusick

By:     _____
        Maurice Cusick, Esq. (RI-6349)
        625 Thames Street
        Newport, RI 02840
        (401) 847-0175 -- Telephone
        mauricecusick@hotmail.com
        *Attorneys for Plaintiff*